**Paul E. & Jo Ann HERRING, Plaintiffs,**

**v.**

**Dr. KNAB, National Naval Medical Center, Dr. G. L. Shaw, National Naval Medical Center, National Naval Medical Center, Defendants.**

**No. C–2–76–162.**

United States District Court,
S. D. Ohio, E. D.

April 6, 1978.

Charles E. Brown, Columbus, Ohio, for plaintiffs.

Albert R. Ritcher, Asst. U. S. Atty., Columbus, Ohio, Walter A. Oleniewski, U. S. Dept. of Justice, Washington, D. C., for defendants.

## OPINION AND ORDER

DUNCAN, District Judge.

This matter is before the Court on defendant's motion for summary judgment. Plaintiffs, Jo Ann and Paul Herring, brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, alleging that government doctors at Bethesda Naval Hospital in Maryland performed a tubal ligation in a negligent manner, which resulted in a later pregnancy. Plaintiffs also allege that the government doctors negligently advised and failed to advise Mrs. Herring of the risks surrounding the tubal ligation and the possibility of future pregnancies.

In moving for summary judgment, defendant argues that the government doctors were not negligent in the performance of the operation as a matter of law and that plaintiffs' claim that the doctors negligently advised and failed to advise Mrs. Herring is barred by the misrepresentation exception to governmental tort liability under the Federal Tort Claims Act, 28 U.S.C. § 2680(h). The Court agrees and accordingly grants the motion for summary judgment under Fed.R.Civ.P. 56.

### I

Title 28 U.S.C. § 1346(b) establishes the jurisdiction of federal district courts to adjudicate cases of governmental tort liability under the Federal Tort Claims Act:

[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury . . . caused by the negligent · or wrongful act or omission of any employee, of the Government while acting with-

in the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The professional standard of care imposed upon physicians in Maryland, the place where the tubal ligation occurred, was recently summarized by the Maryland Court of Special Appeals as:

A duty to use that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances. Under this standard, advances in the profession, availability of facilities, specialization or general practice, proximity of specialists and special facilities, together with all other relevant considerations, are to be taken into account.

*Shilkret v. Annapolis Emergency Hospital Assoc.,* 276 Md. 187, 349 A.2d 245, 253 (1975).

In applying the medical malpractice standard, the Maryland courts follow the general rule that expert evidence is necessary to establish a prima facie case of medical malpractice unless the alleged negligent conduct is within the understanding of laymen, requiring only common knowledge and experience. See, e. g., *Suburban Hospital Assoc., Inc. v. Hadary,* 22 Md.App. 186, 322 A.2d 258, 260–61 (1974). Because surgical procedures, like the tubal ligation at issue here, are generally complex medical practices, they usually are beyond the understanding of laymen and accordingly require expert testimony. *Cf. Johns Hopkins Hospital v. Genda,* 255 Md. 616, 258 A.2d 595 (1969). (Expert testimony required in an action alleging that fragments of a needle were left in plaintiff during heart surgery.)

In support of their claim that the operation was performed negligently, the plaintiffs apparently rely on the testimony of their sole expert witness, Dr. Nicholas Vorys, and the undisputed fact that the operation failed to achieve the desired result. Plaintiffs have offered no further facts tending to show the existence of a genuine fact issue as required by Fed.R. Civ.P. 56(e). The testimony of Dr. Vorys has been preserved by deposition and the Court has reviewed the deposition in its entirety.

Dr. Vorys is a board certified obstetrician and gynecologist licensed to practice medicine in the State of Ohio. Dr. Vorys testified that the standards of medical care for performing laparoscopic tubal ligations do not vary from one portion of the country to the other. He further testified that he is generally familiar with the standards of care at Bethesda Naval Hospital through friends who have taught or trained there, and from serving as a visiting professor in the field of endocrinology at Bethesda. Dr. Vorys based his testimony in this cased upon his personal observations during the performance of a total abdominal hysterectomy on Mrs. Herring subsequent to the tubal ligation, and upon records obtained from Bethesda.

Dr. Vorys testified as follows concerning the operation performed at Bethesda:

I don't feel that I can say that, from his operative notes, either of these doctors or both of them practiced substandard medicine. What they did was apparently utilize a technique, widely used, that we ourselves use here, stopped using it here because of a failure. I can't say that they didn't cut the tube. It just didn't look like they cut the tube. There is no way that I would say either of these gentlemen were guilty of substandard practice of medicine.

Q. So then it is very possible that they could have done either one of two procedures. They could have either gone into do a one, two-burn procedure, or a one-burn, one-cut procedure.

In either event, whichever one they decided to do, that would be consistent with the standards of OB/GYN practice as you know them?

A. In this country, that is right.

Dr. Vorys summarized his testimony in the following fashion:

I think what happened is that it was burned in a proper place by a proper method by accepted technique. Unfortunately, it recanalized. That is really my appraisal of the whole situation.

With respect to the successfulness of tubal ligations of this type, Dr. Vorys stated:

There is a known failure rate with this procedure. It is usually quoted as 1.8 per thousand.

The Court finds that the plaintiffs have failed to show the existence of a genuine issue of material fact. Upon this record there is insufficient evidence to support an inference that the defendant's employees were negligent in the performance of the tubal ligation. The evidence simply fails to provide a basis upon which reasonable minds could conclude that the prevailing standards of medical care at Bethesda were not met.

## II

■ The defendant contends that plaintiffs' claims for negligent advice and failure to advise are barred by the misrepresentation exception to tort liability under the Tort Claims Act. 28 U.S.C. § 2680(h). This section provides in relevant part that:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

.    .    .    .    .    .

(h) Any claim arising out of .  .  .  misrepresentation  .  .  .

Although misrepresentation connotes the making of an incorrect statement, for the purposes of the Tort Claims Act, the term also includes a failure to provide information. *National Manufacturing Co. v. United States,* 210 F.2d 263 (8th Cir. 1954). There the Court stated:

Insofar as the instant claims are based on negligence in failing to inform or warn the plaintiffs that the flood was coming, we think that conduct also is within the exception of section 2680(h).

.    .    .    .    .    .

The purpose of excepting federal liability on account of negligent misrepresenta-

tion necessarily extends to negligent failure to represent which has the same effect as an affirmative misrepresentation. 210 F.2d at 276.

Plaintiffs in the instant case argue that their claims are not based solely upon the defendant's misrepresentations and failure to advise but rather upon the duties owed to a patient from her physician. In *Ingham v. Eastern Air Lines, Inc.,* 373 F.2d 227 (2d Cir. 1967) the Court held that

Where the gravamen of the complaint is the negligent performance of operational tasks, rather than misrepresentation, the government may not rely upon § 2680(h) to absolve itself of liability. 373 F.2d at 239.

This distinction has been recognized in medical malpractice cases brought under the Tort Claims Act. A communicated diagnosis is a representation, and if incorrect, constitutes a misrepresentation within the meaning of 28 U.S.C. § 2680(h). *De Lange v. United States,* 372 F.2d 134 (9th Cir. 1967); *Hall v. United States,* 274 F.2d 69 (10th Cir. 1959). If, however, assuming the government has not only a duty to inform, but also to perform a proper examination and provide treatment, an action for negligence in the examination or treatment is not barred by § 2680(h). *Beech v. United States,* 345 F.2d 872, 874 (5th Cir. 1965); *Hungerford v. United States,* 307 F.2d 99, 103 (9th Cir. 1962); *Blanton v. United States,* 428 F.Supp. 360, 362 (D.C.1977).

In the instant case there is agreement that a tubal ligation was appropriate treatment for Mrs. Herring. The Court has found that the plaintiffs have failed to show that the treatment was rendered in a negligent manner. The Court finds that the remaining claims are similar in nature to the communication of an incorrect diagnosis and fall within the misrepresentation exception under § 2680(h). Where there is a breach of a duty to correctly inform a patient concerning the nature and consequences of an operation, but the operation is medically indicated and performed in accordance with the applicable standards of

medical care, the Court holds that the breach of the duty to inform is not actionable under the Tort Claims Act. *Hungerford, supra.* The gravamen of the complaint on this issue is misrepresentation rather than negligent performance of the operational task. *Ingham, supra.*

### III

The plaintiffs' complaint also alleged that the defendant's employees breach a promise made to Mrs. Herring that she would not again become pregnant. Such a breach of promise may be actionable if the promise constitutes and express warranty and not merely therapeutic reassurance or hopeful expression of opinion. *Sard v. Hardy,* 281 Md. 432, 379 A.2d 1014, 1026–27 (1977). There is no evidence in the instant case that would support a finding of express warranty rather than opinion or expected result. Furthermore, under the Tort Claims Act, such a promise would fall within the misrepresentation exception found in § 2680(h).

### IV

For these reasons, the defendant's motion for summary judgment is GRANTED. The Clerk will enter judgment in favor of the defendant and against the plaintiffs.

It is so ORDERED.