Marilyn LLOYD, etc., Plaintiff,

v.

CESSNA AIRCRAFT COMPANY, Defendant and Third-party Plaintiff,

v.

UNITED STATES of America et al., Third-party Defendants.

UNITED STATES of America, Fourth-party Plaintiff,

v.

SERV–AERO ENGINEERING, INC., Fourth-party Defendant.

No. CIV–4–75–40.

United States District Court, E. D. Tennessee, Winchester Division.

Feb. 2, 1977.

John C. Curtis and Charles P. Dupree, Chattanooga, Tenn., for plaintiff Marilyn Lloyd.

W. Ferber Tracy, Chattanooga, Tenn., for Santa Monica Propeller Service.

Samuel R. Anderson, Chattanooga, Tenn., for Serv-Aero Engineering, Inc.

Paul R. Leitner and R. Vann Owens, Chattanooga, Tenn., for Cessna.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., Hugh Moore, Chattanooga, Tenn., Andrew J. Dilk, Jr., and Jonathan M. Hoffman, Dept. of Justice, Washington, D. C., for the United States.

## MEMORANDUM OPINION AND ORDERS

NEESE, District Judge.

This is a civil action for the recovery of compensatory and punitive damages for the wrongful death of the plaintiff's decedent in the crash of his privately-owned and operated aircraft. 28 U.S.C. § 1332(a)(1), (c). The defendant Cessna Aircraft Company (Cessna) commenced a third-party action, Rule 14(a), Federal Rules of Civil Procedure, against the United States of America (the government) for contribution or indemnity under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2671, et seq. The government moved for a dismissal thereof, contending, inter alia, that such claim is barred by the "misrepresentation exception" to the aforementioned act, 28 U.S.C. § 2680(h), and that accordingly, this Court lacks jurisdiction of the subject matter. Rule 12(b)(1), Federal Rules of Civil Procedure. The Court agrees such contention is correct.

■ The Federal Tort Claims Act, supra, is a broad waiver of the federal government's immunity from liability for the torts of its employees committed while acting in the scope of their employment. Fitch v. United States, C.A. 6th (1975), 513 F.2d 1013, 1015[1], certiorari denied (1976), 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95. Such act " * * * contains various exceptions,

however, and in construing the Act the courts must 'carry out the legislative purpose of allowing suits against the Government for negligence with due regard for the statutory exceptions to that policy.' * * * " Idem., quoting from Dalehite v. United States (1953), 346 U.S. 15, 31, 73 S.Ct. 956, 965[5], 97 L.Ed. 1427. Where the conduct complained of falls within one of the statutory exceptions, the district court is without jurisdiction of the subject matter thereof. United States v. Taylor, C.A. 6th (1956), 236 F.2d 649, 652[2], motion to remand denied (1957), 353 U.S. 956, 77 S.Ct. 862, 1 L.Ed.2d 907, certiorari dismissed (1958), 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19; Konecny v. United States, C.A. 8th (1967), 388 F.2d 59, 62[2-5]; Gibson v. United States, C.A.3d (1972), 457 F.2d 1391, 1392 n. 1; Robinson v. United States, D.C.Tenn. (1976), 422 F.Supp. 121, 122[1].

■ Inter alia, the Congress has provided that the aforementioned limited waiver of sovereign immunity " * * * shall not apply to * * * [a]ny claim arising out of * * * misrepresentation. * * *." 28 U.S.C. § 2680(h). This term must be construed according to the traditional and commonly understood legal definition of such tort. United States v. Neustadt (1961), 366 U.S. 696, 706, 81 S.Ct. 1294, 1300[4], 6 L.Ed.2d 614; Fitch v. United States, supra, 513 F.2d at 1015[2]. " * * * It is settled that this exception includes claims arising out of negligent as well as intentional misrepresentation. * * * " Fitch v. United States, supra, citing Neustadt v. United States, supra.[1]

Herein, the third-party plaintiff Cessna seeks indemnification or contribution from the national sovereign for the alleged negligence of its agents and employees in the Federal Aviation Administration in their inspection and testing of the aircraft involved prior to such agency's issuance of a supplemental-type certificate and an airworthiness certificate therefor. Specifically, Cessna claims that:

\* \* \* \* \* \*

---

[1]. For numerous other cases in accord, see anno: Federal Tort Claims Act—Misrepresentation and Deceit, 30 A.L.R.Fed. 421, 437, § 3[b].

* * * the agents and employees of the third-party defendant the United States of America, through its agency the FAA, while acting within the scope of their employment and office, authorized the issuance of an airworthiness certificate for the aircraft involved herein; that such agents and employees were negligent in so doing, in that such certificate was issued without adequate inspection and testing of the safety and suitability of the airframe, engine, engine-mount and propeller-combination of such aircraft; that the negligence of the FAA, in failing to properly enforce the applicable existing regulations and policies related thereto in the issuance of the supplemental type certificate and airworthiness certificate, was a proximate cause of this crash; that the negligence of the FAA, in certifying the use of the engine-mount involved, when it knew or should have known that the mount was inadequate for such use, was a proximate cause of this crash; that such accident was the sole and proximate result of such active and primary negligence on behalf of such agents of the third-party defendants, including Mr. Ray Fulton of Santa Monica Propeller Service, who is authorized to sign on behalf of the FAA, and who on May 1, 1968 certified that [the propeller] hub [which the plaintiff claims was the cause of her decedent's death] was repaired and inspected in accordance with current Civil Air Regulations and was found airworthy for return and service; and that, under the Federal Tort Claims Act, 28 U.S.C. § [2671], et seq., it is entitled to indemnification and contribution from the United States for any judgment rendered against it herein.

* * * * * *

Revised pretrial order herein of September 22, 1976, § II(c)(1).[2]

■ Although Cessna has cast its third-party claims against the government

"* * * in the guise of a negligence action, this does not automatically take the case outside the misrepresentation exception. * * *" *Fitch v. United States, supra,* 513 F.2d at 1015[3, 4]. The Court must look beyond the literal meaning of such claims, to ascertain the real nature of Cessna's allegations against the government. *Idem.* In determining whether the conduct complained of falls within an exception to the aforecited act, the substance of the claim, and not the language used in stating it, is controlling. *Gaudet v. United States,* C.A.5th (1975), 517 F.2d 1034, 1035[5].

■ The critical issue is, not whether Cessna has asserted its claim in terms of negligence, but whether the Congress intended to bar this type of suit, under whatever legal theory it is brought, by expressly limiting its waiver of governmental immunity in the Federal Tort Claims Act, *supra.* See 35 Am.Jur. (2d) 306–307, Federal Tort Claims Act § 14. In several cases arising under the Federal Tort Claims Act, *supra,* the courts have held that negligent inspections and testing by government officials, which conduct results in incorrect information being reported and relied upon, in reality amount to a claim arising out of misrepresentation so as to be precluded by the aforementioned exception to the aforecited act.

The starting point in such a consideration is clearly the decision of the Tenth Circuit in *Hall v. United States,* C.A.10th (1959), 274 F.2d 69. Therein, the plaintiff, a cattleman, sought to recover money damages from the national sovereign for harm sustained from the negligent testing of his cattle by employees of the U.S. Department of Agriculture. Such test-results, which were revealed to the plaintiff, indicated that his cattle were diseased. As a proximate consequence, the plaintiff's herd was subject to quarantine, so that the sale thereof was necessarily made at a reduced

---

2. Such pretrial order, by its terms, supplanted the pleadings herein. *Ibid.,* at X(b); *United States v. Hougham* (1960), 364 U.S. 310, 315, 81 S.Ct. 13, 5 L.Ed.2d 8, 14 (headnote 4), rehearing denied (1960), 364 U.S. 938, 81 S.Ct. 376, 5 L.Ed.2d 372; *Monod v. Futura, Inc.,* C.A.10th (1969), 415 F.2d 1170, 1173[1].

price. Although the plaintiff argued that his suit was predicated upon the negligence of the government's employees, and not upon any misrepresentation, the Tenth Circuit rejected such contention. In so doing, the Court stated:

> * * * [The] [p]laintiff's real claim is that because of the negligent manner in which these tests were made, the result showed that [the] plaintiff's cattle were diseased; whereas, in fact, they were free from disease and that the Government misrepresented the true condition of these cattle. [The] [p]laintiff's loss came about when the Government agents misrepresented the condition of the cattle, telling him they were diseased when, in fact, they were free from disease. The claim is that this misrepresentation caused [the] plaintiff to sell his cattle at a loss. This stated a cause of action predicated on a misrepresentation. * * *

*Ibid.*, 274 F.2d at 71[1]. The Court pointed out, however, that there was " * * * no claim that because of [such] negligent testing these cattle suffered physical damages which made them less valuable, such as may come from the use of a noxious or poisonous substance. * * * " *Ibid.*, 274 F.2d at 71. Implicit in such statement is a recognition that, if the government had actually physically damaged these cattle during their inspection and testing, then such conduct would not have been barred by the misrepresentation exception.

The *Hall* rationale was followed two years later by the Supreme Court in *United States v. Neustadt, supra.* Therein, the Court held that this misrepresentation exception likewise barred a claim by a purchaser of a home who, in reliance upon a negligent inspection and appraisal by personnel of the Federal Housing Administration, had been induced to pay more for property than it was actually worth, and accordingly, who had sustained monetary damages. The plaintiffs' contention therein, that their action was predicated upon the negligence of the federal government

and not upon misrepresentation, was rejected by the Court. Neither was the Court persuaded by the plaintiffs' further argument that their lawsuit was based upon the breach of a specific duty owed to them by the government. It was explained:

> * * * To say * * * that a claim arises out of "negligence," rather than "misrepresentation," when the loss suffered by the injured party is caused by the breach of a "specific duty" owed by the Government to him, i. e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely * * * is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation," * * * which there is every reason to believe Congress had in mind when it placed the word "misrepresentation" before the word "deceit" in [28 U.S.C.] § 2680(h). * * *

*Ibid.*, 366 U.S. at 706–707, 81 S.Ct. at 1300–1301[4].

Both *Hall* and *Neustadt, supra,* were principally relied upon by the Sixth Circuit in its recent decision in *Fitch v. United States, supra.* That was an action under the Federal Tort Claims Act, *supra,* to recover money damages from the national government for the plaintiff's wrongful induction into the armed forces. Because of the alleged negligence of the employees of his local draft board, the plaintiff's draft lottery number was erroneously transcribed as 132 instead of 309. While stationed in Viet Nam, the plaintiff was informed of the error and was discharged shortly thereafter. The Court of Appeals reversed the trial court's judgment in favor of the plaintiff and directed that the complaint be dismissed. In so doing, Judge Celebrezze wrote that:

> As in *Hall* [*supra*], [the plaintiff's] complaint "arose out of" a negligent misrepresentation. It occurred when

Government agents misrepresented [the plaintiff's] obligation to enter the Army, telling him that he was required to serve when, in fact, he was free from that duty. We are under the same obligation to dismiss the complaint as the Supreme Court recognized in *Neustadt*:

While we do not condone carelessness by government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability. 366 U.S. at 710–11, 81 S.Ct. at 1302.

\* \* \* \* \* \*

*Fitch v. United States, supra*, 513 F.2d at 1016[5].

Numerous other decisions cited by the Sixth Circuit in *Fitch, supra*, " \* \* \* haye uniformly applied this analysis in barring actions which arose out of misrepresentations by Government employees. \* \* " *Ibid.*, 513 F.2d at 1016 n. 2. " \* \* \* An incorrect representation is [a] 'misrepresentation' within the meaning of \* \* \* [28 U.S.C. § 2680(h)], whether wilful or based upon negligence in ascertaining the facts represented. \* \* \* " *DeLange v. United States*, C.A.9th (1967), 372 F.2d 134[2]. Thus, where the negligence of federal employees, whether by inspection, testing, diagnosis, or otherwise, has resulted in the conveyance of erroneous information, thereby causing damages or other loss to the plaintiff, the courts have held that any action against the national sovereign based on the Federal Tort Claims Act, *supra* is barred by the misrepresentation exception. See: *Rey v. United States*, C.A.5th (1973), 484 F.2d 45 (negligent diagnosis or testing of the plaintiffs' hogs resulting in erroneous notification that such animals were inflicted with hog cholera, causing subsequent loss by required quarantine and inoculation); *Reamer v. United States*, C.A.4th (1972), 459 F.2d 709 (misrepresentation that the plaintiff could defer active duty until completion of law school semester if he enlisted, resulting in monetary loss upon earlier order to active duty); *Mizokami v. United States*, (1969), 414 F.2d 1375, 188 Ct.Cl. 736 (negligence resulting in erroneous determination by Federal Food and Drug Administration personnel that the plaintiffs' spinach crops were contaminated by a pesticide); *DeLange v. United States, supra* (erroneous diagnosis by physician); *Anglo-American & Overseas Corp. v. United States*, C.A.2d (1957), 242 F.2d 236 (misrepresentation that tomato paste could be imported as in compliance with FDA standards, resulting in destruction of goods as unsafe after their importation); *National Mfg. Co. v. United States*, C.A.8th (1954), 210 F.2d 263, certiorari denied (1954), 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108 (misrepresentation of weather and flood information, causing property damage); *Clark v. United States*, C.A.9th (1954), 218 F.2d 446 (misrepresentation of safety from flood of town built as a war project); *Jones v. United States*, C.A.2d (1953), 207 F.2d 563, certiorari denied (1954), 347 U.S. 921, 74 S.Ct. 518, 98 L.Ed. 1075 (misrepresentation of amount of oil estimated to be on land, resulting in sale of stock at a loss); *Vaughn v. United States*, D.C.Miss. (1966), 259 F.Supp. 286 (misrepresentation of pipeline placement on government map, resulting in explosion upon impact of the plaintiff's dragline); *Steinmasel v. United States*, D.C.S.D. (1962), 202 F.Supp. 335 (misrepresentation of deadline for requesting veterans' benefits, resulting in ineligibility for educational benefits).

Each of the foregoing cases was cited with approval by the Sixth Circuit in *Fitch, supra*. In addition, there are other decisions in *accord*: *Scanwell Laboratories, Inc. v. Thomas*, (1975), 172 U.S.App.D.C. 281, 521 F.2d 941 (misrepresentation of personnel of the Federal Aviation Administration that it would abide by the terms of a bid invitation and by its own regulations); *Saxton v. United States*, C.A.8th (1972), 456 F.2d 1105 (erroneous government report that the plaintiff's cattle were not diseased, so as to prevent the timely treatment of such diseased animals); *Miller Harness Co. v. United States*, C.A.2d (1957), 241 F.2d 781 (misrepresentation by the government as to the contents of certain auctioned property); *Western Steel Buildings, Inc. v. Adams*,

D.C.Col. (1968), 286 F.Supp. 570 (erroneous representation in government publication concerning the pressure on warehouse walls which collapsed); *United States v. Sheehan Properties, Incorporated*, D.C.Minn. (1968), 285 F.Supp. 608 (negligence of government personnel in failing to inform plaintiff of certain facts concerning his investment in a corporation); *Bartie v. United States*, D.C.La. (1963), 216 F.Supp. 10, affirmed C.A.5th (1964), 326 F.2d 754, certiorari denied (1964), 379 U.S. 852, 85 S.Ct. 98, 13 L.Ed.2d 55 (negligence of weather bureau in giving misinformation concerning a hurricane, resulting in the death of the plaintiff's wife and children).

More persuasive, however, are the decisions of two federal district courts holding that federal tort claim actions, based upon the Federal Aviation Administration's negligence in issuing an airworthiness certificate, fall within the misrepresentation exception. In *Marival, Inc. v. Planes, Inc.*, D.C.Ga. (1969), 306 F.Supp. 855, an airplane purchaser brought an action to recover damages from the defendant seller on the basis of the latter's misrepresentation and breach of implied warranties concerning the condition of such aircraft. The defendant filed a third-party action against the government under the Federal Tort Claims Act, *supra*, upon the theory that its personnel had negligently issued an airworthiness certificate for such aircraft upon which such defendant had relied. The defendant and third-party plaintiff's contention was that, if the aircraft was in fact unairworthy, the government inspector negligently made his annual inspection and negligently certified the craft's airworthiness. In granting the government's motion for a dismissal because of the misrepresentation exception, the Court noted that " * * * [t]he real question * * * is whether the third-party complaint is founded upon an allegation of negligent inspection of the aircraft or negligent misrepresentation, through a certificate that the aircraft was airworthy. * * * " *Ibid.*, 306 F.Supp. at

858[7]. The Court concluded that the third-party " * * * complaint and [the] hopes for recovery [were] bottomed upon negligent misrepresentation, rather than negligent conduct. * * * " *Idem.* This was true even though " * * * [n]egligent conduct in acquiring the facts may have led to the negligent misrepresentation, but the injuries arose from the misrepresentation and not the negligent conduct. * * * " *Ibid.*, 306 F.Supp. at 859[8].

A similar ruling was made by Judge Finesilver in *Dieter Bibbig, Etc.*, plaintiff, *v. United States of America*, defendant, D.C. Col. (1973), civil action no. C–4604, order of May 3, 1973. That action was brought under the Federal Tort Claims Act, *supra*, seeking damages for the crash of a motorized glider aircraft which allegedly had been " * * * negligently inspected and issued an airworthiness certificate * * " by an agent of the Federal Aviation Administration. Upon considering the government's motion for a dismissal, the issue presented was whether the " * * * negligent inspection and certification of an aircraft by an FAA inspector constitute[d] a claim based on misrepresentation within the meaning of 28 U.S.C. § 2680(h). * * * " After reviewing many of the cases cited hereinabove, Judge Finesilver concluded " * * * that the actions of the government inspector f[e]ll within [such] protected exception of Federal tort liability * * ." Explicitly rejected therein was the plaintiff's contention that cases in which the misrepresentation was applied to a commercial setting were irrelevant to the facts of such lawsuit. Accordingly, the government's motion was granted, and the complaint against the government was dismissed.

In light of the foregoing, it is the Court's opinion that Cessna's third-party claim herein against the government arises out of the latter's misrepresentation, so as to be barred by the aforementioned statutory exception.[3] Any negligent conduct by the

---

**3.** The conduct of the government's personnel complained of herein by Cessna clearly falls into the American Law Institute's definition of "negligent misrepresentation." Restatement of the Law, Second, Torts (2d), § 311, see especially comment d, illustration 8. Such section

government's agents and employees, as alleged herein, could amount to nothing more than a misrepresentation as to the true condition of the aircraft involved. If the airworthiness certificate and the supplemental-type certificate were improperly issued because of the negligence of FAA's personnel, as is claimed by Cessna, then such was the conveyance of erroneous information as to the actual condition of this aircraft. If the government certified that this plane was airworthy, when in fact it was not, then such third-party defendant misrepresented such true fact. There is no claim made by Cessna herein that, in their inspection or testing, the government personnel caused any direct physical harm to the aircraft itself which resulted in or contributed to the fatal crash which is the subject hereof. Rather, the whole purport of Cessna's contentions is that the government, through the Federal Aviation Administration, represented by its issuance of the aforementioned certificates that this aircraft was airworthy when actually it was not.

█ The Court finds Cessna's arguments to the contrary unpersuasive. As is demonstrated by the authorities heretofore cited, the misrepresentation-exception is just as applicable to actions involving personal injury, wrongful death, or property damages, as it is to those involving only financial or commercial loss. This Court is unaware of any indication that the Congress intended such exception to apply only to the latter types of lawsuits. See and *cf.* Restatement of the Law Second, Torts (2d) § 311, comment d, illustration 8. The cases of *Wenninger v. United States*, D.C.Del. (1964), 234 F.Supp. 499, affirmed C.A.3d (1968), 352 F.2d 523, and *Ingham v. Eastern Airlines, Inc.*, C.A.2d (1967), 373 F.2d 227, certiorari denied (1967), 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292, cited by Cessna, are inapposite.

Each such decision involved an alleged negligent failure by government personnel to warn of an imminently hazardous condition to aircraft, as opposed to an affirmative false representation of the absence of a dangerous or unsafe condition.

It results that the motion of the third-party defendant the United States of America for a dismissal of the third-party claim against it herein hereby is GRANTED.[4] Such third-party action hereby is DISMISSED for lack of the Court's jurisdiction of the subject matter. Rule 12(h)(3), Federal Rules of Civil Procedure; 28 U.S.C. § 2680(h). Such disposition of the third-party action against the government renders MOOT all motions pending herein. Furthermore, since the government's fourth-party action herein against Serv-Aero Engineering, Inc. is premised upon a finding of the government's liability herein, such fourth-party claim has been rendered MOOT, and the same hereby is DISMISSED. Rule 14(a), Federal Rules of Civil Procedure.

The Court hereby DETERMINES expressly that there is no just reason for delay in so doing and hereby DIRECTS the entry of a final judgment for the third-party defendant United States of America on the third-party claim herein of the third-party plaintiff Cessna Aircraft Company and the entry of a final judgment for the fourth-party defendant Serv-Aero Engineering, Inc. on the fourth-party claim herein of the fourth-party plaintiff United States of America. Rules 54(b), 58(2), Federal Rules of Civil Procedure.

Counsel for the plaintiff Ms. Lloyd, etc., the defendant and third-party plaintiff Cessna Aircraft Company, and the third-party defendant Santa Monica Propeller Service, respectively, will consult and, within 10 days herefrom, report through the clerk their joint revised estimate of the

---

has been applied to the conduct of the federal government in an action brought under the Suits in Admiralty Act, 46 U.S.C. § 742. *Kommanvittselskapet Harwi (R. Wigand) v. United States*, C.A.3d (1972), 467 F.2d 456, 459 n. 4, 464 n. 10, certiorari denied (1973), 411 U.S. 931, 93 S.Ct. 1898, 36 L.Ed.2d 391.

4. The Court expresses no opinion as to the merit of any of the government's other contentions urged in support of its motion for a dismissal of such claim against it.

probable length of trial as to the issues remaining and the chances of settlement thereof prior to trial.