Octavio Jiménez NIEVES, Ana Josefa Rivera De Jiménez and the Conjugal Partnership Composed By Them; John Doe As Guardian Ad Litem For Carmen Milagros Jiménez Rivera, Octavio Jiménez Rivera, Jr., Wilda Gisela Jiménez Rivera and Ana Ivelise Jiménez Rivera, Plaintiffs,

v.

UNITED STATES of America; the Secretary of the Department of Health, Education and Welfare, and the Secretary of the Treasury of the United States In Their Official and Individual Private Capacity, Defendants.

Civ. No. 80–0786.

United States District Court,
D. Puerto Rico.

June 18, 1981.

Blas C. Herrero, Jr., Hato Rey, P. R., for plaintiffs.

E. M. de Jesús, Asst. U. S. Atty., Hato Rey, P. R., Orlando R. Ruíz, Trial Atty., Torts Branch, Civil Division U.S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND JUDGMENT

CEREZO, District Judge.

Mr. Octavio Jiménez Nieves, his wife and their four minor children seek damages against the United States in the sum of $1,000,000 under the Federal Tort Claims Act, 28 United States Code Sections 1346(b), 2671–2678, 2680. In deciding the motion to dismiss, the facts alleged in their complaint are deemed true. The factual situation set forth in the complaint is that of a plaintiff whose mother, a recipient of Social Security benefits, died on March 26, 1976 and due to a mistake of an employee of the Social Security Administration the date of her death was set as March 26, 1975. The pertinent allegations relative to governmental liability assert that every Social Security check endorsed by the deceased and negotiated by her son Octavio Jiménez Nieves during the year 1975 was returned with the notation that they were not honored because the checks had been improperly negotiated since the payee had died on March 1975. Upon refusal of defendants to pay said checks, the banks required plaintiff to make immediate restitution of the amounts paid. This in turn caused financial hardship which required that he borrow to cope with the unforeseen situation. Allegation 14 of the complaint expresses that "plaintiff's predicament was compounded further when Medicare, relying on false information provided by the Social Security Administration refused to pay for the medical expenses incurred in the treatment of plaintiff's ailing mother who had undergone a surgical intervention just before her death." All other allegations of the complaint having to do with liability are predicated upon the conveyance of false or incorrect infor-

mation as to the death of plaintiff's mother by the Social Security Administration. The responsive pleading of defendants admits that because of a typographical error made while entering information into a computer at the Social Security Administration the date of death of plaintiff's mother was set as March 26, 1975 instead of March 26, 1976 causing refusal of payment of a number of Social Security checks.

Defendants have requested dismissal of the complaint alleging that the claim falls without the Federal Tort Claims Act. Although they have advanced three grounds for dismissal, the Court shall limit its analysis to the misrepresentation exception of the Act. Defendants characterize the factual situation which originates this claim as one of misrepresentation and thus contend that the claim is not actionable under the Act. Section 2680(h) which establishes one of the several exceptions to governmental liability under the Act reads:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

Plaintiffs confront this jurisdictional attack by referring in general terms to the negligent conduct of defendants "in failing to consult with the plaintiffs themselves and not honoring the checks as well as by not keeping properly their records."[1] They invoke the statutory provision in the Civil Code of Puerto Rico, 31 LPRA Section 5298, which establishes the traditional concept of negligence and the duty to repair for the damage done. Plaintiffs refer to an unspecified breach of duty by defendants and claim that they failed to exercise reasonable care towards them.

Without doubt, the passing of the Federal Tort Claims Act was an "example of the progressive relaxation by legislative enactments of the rigor of the immunity rule." *Dalehite v. United States,* 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1952). However, the Act contemplates situations in which a claim is precluded even though negligently performed. These situations are contemplated in the specific exception set forth in Section 2680, an example of which is a situation of misrepresentation along with others such as errors in the exercise of discretionary functions on the part of government employees, claims arising out of loss, miscarriage or negligent transmission of postal matters. Commenting on the excepted claims and the statutory construction of such statute, the court in *Dalehite, supra,* at pages 30–31, 73 S.Ct. at pages 965–966, stated: "Through such statutes that change the law, organized government expresses the social purposes that motivate its legislation. Of course, these modifications are entitled to a construction that will accomplish their aim, that is, one that will carry out the legislative purpose of allowing suits against the Government for negligence with due regard for the statutory exceptions to that policy. In interpreting the exceptions to the generality of the grant, courts include only those circumstances which are within the words and reason of the exception. They cannot do less since petitioners obtain their 'right to sue from Congress [and they] necessarily must take it subject to such restrictions as have been imposed.'" Having examined the allegations of complaint pertaining to liability, the Court must determine whether the circumstances there described present a claim which arises out of negligent misrepresentation.[2] As stated before, plaintiffs' opposition to dismissal is based on a characterization of the claim as one arising out of negligent conduct on the part of defendants in preparing records and conveying information which allegedly breached a duty towards them. It is important to note the factual setting asserted by plaintiffs them-

---

1. Page 8 of the memorandum filed by plaintiffs on January 23, 1981 in opposition to the motion to dismiss.

2. The misrepresentation exception of Section 2680(h) include negligent as well as intentional misrepresentation.

selves in the complaint. It is plaintiff Octavio Jiménez Nieves' mother who was the recipient of Social Security benefits and it was his custom to cash his mother's checks, after her endorsement, at local stores or banks. Plaintiff's allegations of loss to his credit, reputation and financial well-being all stem from the dissemination by the agency of the incorrect fact that his mother had died in 1975 and thus triggered the refusal of payment of the Social Security checks issued during that year. Allegation 14 of the complaint is illustrative of the effect of the agency's conveyance of false information. The misstatement concerning the date of death of the Social Security recipient is the cause of plaintiff's claim and his multiple allegations of mental and moral suffering as well as aggravation of pre-existent physical conditions. Plaintiffs' argument in opposition to dismissal is analogous to others which have been repeatedly rejected by the courts, that is, that the claim arises out of the negligent acts, disregarding the misrepresentation aspects which are the crux of the factual situation involved. This contention was rejected by the Supreme Court in the case of *United States v. Neustadt*, 366 U.S. 696, 703, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1960) stating:

> "Throughout this line of decisions, the argument has been made by plaintiffs, and consistently rejected by the courts, until this case, that the bar of section 2680(h) does not apply when the gist of the claim lies in negligence underlying the inaccurate representation, i. e., when the claim is phrased as one 'arising out of' negligence rather than 'misrepresentation.' But this argument, as was forcefully demonstrated by the Tenth Circuit in *Hall v. United States*, supra, is nothing more than an attempt to circumvent section 2680(h) by denying that it applies to negligent misrepresentation."

In interpreting the exclusion of battery in Section 2680(h), the Second Circuit in *Lambertson v. United States*, 528 F.2d 441, 444–445 (1976) said: "to permit plaintiff to recover by 'dressing up the substance' of battery in the 'garments' of negligence would

be to 'judicially admit at the back door that which has been legislatively turned away at the front door.'" See also: *Rey v. United States*, 484 F.2d 45, 50 (1973); and *Lloyd v. Cessna Aircraft Co.*, 429 F.Supp. 181, 184 (1977).

Plaintiffs only apparent denial of its claim as one arising out of negligent misrepresentation is their reliance on the case of *Quiñones v. United States*, 492 F.2d 1269 (3rd Cir. 1974) which is distinguishable from the present action. The exception to the Federal Tort Claims Act dealt with in that case was the libel and slander exclusion. The court there had before it an employer-employee relationship and under the law of Pennsylvania held that the United States as employer owed plaintiffs a duty to keep adequate employee records. In our case, plaintiffs have referred to a generic, vague duty owed them yet there is nothing alleged in the complaint which can point to a statutory duty of the Social Security agency towards plaintiffs. Under the factual situation of *Quiñones, supra*, the court found that under the principles of tort law of Pennsylvania defendant had a duty to maintain adequate employment records of its employees and it was restricted to that tort that the claim was actionable.

In the case before us, however, plaintiffs' economic hardships, mental suffering and all other loss came about or arose out of the erroneous representation by an agency employee of the date of his mother's death. This case has a strong resemblance with *Fitch v. United States*, 513 F.2d 1013 (6th Cir. 1975) in which plaintiff was drafted into the United States Armed Forces due to an error at the local board resulting in the inscription of his number as 132 when in reality it was 309. There was no dispute that he was wrongfully inducted because of a mistake in the "erroneous assignment of his lottery number." The court there held that Fitch's claim arose out of a negligent misrepresentation by government agents and that although the complaint was cast in the guise of a negligence action that did not automatically take the case outside the misrepresentation exception. In determining

whether a claim falls within the misrepresentation exception, the court in *Lloyd, supra*, at p. 185, held that: "where the negligence of federal employees, whether by inspection, testing, diagnosis, or otherwise, has resulted in the conveyance of erroneous information, thereby causing damages or other loss to the plaintiff, the courts have held that any action against the national sovereign based on the Federal Tort Claims Act . . . is barred by the misrepresentation exception."

Due regard for the statutory exceptions established in the Federal Tort Claims Act, leads us to conclude that plaintiffs' claim falls within the misrepresentation exception of the Act. As expressed by the Supreme Court in *Neustadt*, at 710–711, 81 S.Ct. at 1302–1303:

"While we do not condone carelessness by government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability."

For the reasons aforestated, this action is hereby DISMISSED.

SO ORDERED AND ADJUDGED.